IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**WESCO INSURANCE COMPANY**     **PLAINTIFF**

V.     **NO. 1:16-CV-165-DMB-DAS**

**ARCHER LANDSCAPE GROUP, LLC;**
**GERALD SELLERS; RICHARD STRACHAN;**
**and TIMOTHY BRASFIELD**     **DEFENDANTS**

## MEMORANDUM ORDER AND OPINION

Before the Court in this declaratory judgment action is Wesco Insurance Company's motion for summary judgment. Doc. #47.

**I**
**Summary Judgment Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, "[s]ummary judgment is proper only if the pleadings and record materials reveal no genuine issue as to any material fact." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018). "A material fact is one that might affect the outcome of the suit under governing law, and a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. (quotation marks and citations omitted). In making these determinations, a court "must view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in the non-movant's favor." *Id*. (quotation marks and alterations omitted). "The party moving for summary judgment bears the burden of identifying the portions of the record that demonstrate the absence of a genuine issue of material fact, and the nonmovant must then point to or produce specific facts demonstrating that there is a genuine issue of material fact." *James v. Woods*, 899 F.3d 404, 407 (5th Cir. 2018) (quotation marks and citation omitted). "Where the nonmoving party bears the

burden of proof at trial, the moving party satisfies this initial burden by demonstrating an absence of evidence to support the nonmoving party's case." *Celtic Marine Corp. v. James C. Justice Cos., Inc.*, 760 F.3d 477, 481 (5th Cir. 2014).

# II
# Factual Background and Procedural History

Archer Landscape Group, LLC was formed in May 2012 to provide landscape construction and maintenance services. Doc. #47-2 at 6–7, 23–24. Since the company's inception, Gerald Sellers has served as president and landscape architect. *Id*. at 6.

In July 2013, Wesco issued Archer Landscape an insurance policy ("Policy") that provided liability coverage from July 2, 2013, through July 2, 2014. Doc. #38-2. The Policy states in relevant part:

> SECTION I – COVERAGES
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> 1. Insuring Agreement
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or "property damage" to which this insurance does not apply.
> . . .
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> (2) The "bodily injury" or "property damage" occurs during the policy period
> . . .
>
> 2. Exclusions
> This insurance does not apply to:
> . . .
>
> e. Employer's Liability
> "Bodily injury" to:
> (1) An "employee" of the insured arising out of and in the course of:
> (a) Employment by the insured; or

>    (b) Performing duties related to the conduct of the insured's business.
>
>    . . .
>
>    This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.
>
>    This exclusion does not apply to liability assumed by the insured under an "insured contract".
>
>    . . .
>
>    SECTION V – DEFINITIONS
>
>    . . .
>
>    3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
>    . . .
>
>    5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".
>
>    . . .
>
>    10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".
>
>    . . .
>
>    19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.
>
>    20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you; and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

Doc. #38-2 at 15–16, 26–29.[1] The Policy was later modified to define "bodily injury" as "bodily injury, mental anguish, mental shock, fright, disability, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id*. at 58.

By November 2013, Archer Landscape had hired three employees—Levi Conway, Brett

---

[1] Because Document #38-2 consists of a series of insurance policy documents which all have their own individual page numbers, citations to it use the CM/ECF page numbers.

Patton, and Timothy Brasfield.  Doc. #47-2 at 20.  Brasfield was hired to complete general landscape maintenance tasks.  *Id*. at 8.

On or about November 30, 2013, Brasfield reported for work at Sellers' house, which was used as Archer Landscape's supply and material storage location.  *See* Doc. #47-1 at 20–21, 55.  Brasfield and Patton met briefly with Sellers, loaded the company trailer with the supplies needed for the day, and proceeded in the company truck to a work site at Kossuth United Methodist Church.  Doc. #47-1 at 21; Doc. #47-2 at 9.  After Brasfield and Patton finished their work at the church, they drove to Richard Strachan's farm to complete an assignment Patton and Sellers previously discussed.  Doc. #47-1 at 22–26.

At Strachan's farm, Sellers, Patton, and Brasfield attempted to repair a broken post on a shed using an auger attached to a tractor.  *Id*. at 28–29.  While Sellers operated the auger, Brasfield manually pushed down on the machinery with his hands.  *Id*. at 31.  A part of Brasfield's jacket caught in the machinery and when Brasfield reached to remove his jacket, his arm became entangled in the machinery as well.  *Id*. at 40–41.  As a result, Brasfield's left arm was severed from his body by the machinery.  *Id*.

Brasfield was transported to Memphis Med to undergo emergency treatment and remained in the hospital for six days.  *Id*. at 43.  After his release from Memphis Med, he returned periodically over the next eight weeks for additional treatment.  *Id*.  Brasfield completed the remainder of his treatment at Faith Clinic in Kossuth, Mississippi, and Booneville Clinic in Booneville, Mississippi.  *Id*. at 45–47.

On October 5, 2015, almost two years after the incident at Strachan's farm, Brasfield filed a complaint in the Circuit Court of Alcorn County, Mississippi, against Archer Landscape, Sellers,

and Strachan seeking compensatory damages for his injuries. Doc. #38-1.[2]

On September 9, 2016, Wesco filed this action against Archer Landscape, Sellers, Strachan, and Brasfield seeking a declaration that under the Policy, it has no duty to defend or indemnify Archer Landscape against Brasfield's state court claims. Doc. #1 at 12. On December 12, 2016, Brasfield moved to dismiss Wesco's complaint for lack of jurisdiction. Doc. #14. United States District Judge Sharion Aycock denied Brasfield's motion to dismiss on August 25, 2017. Doc. #17. After Brasfield moved for reconsideration of the order denying his motion to dismiss, Doc. #20, Judge Aycock entered an order of recusal and this case was reassigned to the undersigned district judge, Doc. #25.

On February 27, 2018, Wesco, with leave of the Court,[3] filed an amended complaint. Doc. #38. On March 7, 2018, Brasfield filed an answer to the amended complaint and a motion to stay. Doc. #39; Doc. #40. Two weeks later, on March 21, 2018, Brasfield filed a motion to expedite hearing on his motion to stay. Doc. #42. The same day, Wesco filed a motion to strike the motion to expedite and a response opposing the motion to stay. Doc. #43; Doc. #44. On June 11, 2018, the Court denied Brasfield's motion for reconsideration, Doc. #46; and thereafter denied Brasfield's motion to stay and denied as moot Wesco's motions to expedite and strike, Doc. #53.

On June 18, 2018, Wesco moved for summary judgment. Doc. #47. Strachan did not respond to the summary judgment motion. Archer Landscape, Sellers, and Brasfield filed timely responses opposing the motion, and Wesco timely replied. Docs. #56, #58, #60.

---

[2] Brasfield's state court complaint alleges that Archer Landscape, Sellers and Strachan are negligent for (1) failing to provide adequate equipment, (2) failing to provide a safe workplace, (3) knowingly instructing him to use faulty equipment, and (4) intentionally placing him in a dangerous situation. Doc. #38-1 at 3.

[3] Wesco sought and was granted leave to amend its original complaint to include a missing page. Doc. #36; Doc. #37.

**III**
**Analysis**

Wesco asks the Court to declare that it has no duty to defend or indemnify Archer Landscape in Brasfield's state court action. Wesco argues that the allegations of Brasfield's state court complaint are excluded from coverage under the Policy because Brasfield alleges that he was injured while working as an Archer Landscape employee, and the Policy provides that Wesco is not obligated to defend or indemnify Archer Landscape against claims by employees for bodily injury arising during employment. The defendants argue that the allegations of Brasfield's state court complaint are not excluded from coverage under the Policy because Brasfield was functioning as an employee at the time he was injured. Doc. #57 at 4–5; Doc. #59 at 6.

**A. Allegations of Complaint Rule**

Under Mississippi law,[4] an insurer's duties to defend and indemnify are independent legal duties. *Estate of Bradley ex rel. Sample v. Royal Surplus Lines Ins. Co.*, 647 F.3d 524, 529 (5th Cir. 2011). The duty to defend is the insurer's obligation to provide the insured a legal defense against lawsuits, and the duty to indemnify is the insurer's obligation to pay for covered claims and judgments against the insured. *Moeller v. Am. Guar. & Liab. Ins. Co.*, 707 So. 2d 1062, 1068 (Miss. 1996). An insurer may have a duty to defend but no duty to indemnify. *Evanston Ins. Co. v. Neshoba Cty. Fair Ass'n, Inc.*, 442 F. Supp. 2d 344, 346 n.1 (S.D. Miss. 2006). However, "if there is no duty to defend, there can be no duty to indemnify." *Id*.

The duty to defend is triggered when an insurer learns that a complaint is filed, and the allegations of the complaint are reasonably and plausibly within the scope of coverage provided by the insurance policy. *Baker Donelson Bearman & Caldwell, P.C. v. Muirhead*, 920 So. 2d 440,

---

[4] In this diversity action, the Court applies the substantive law of the forum state, which here, is Mississippi. *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015).

451 (Miss. 2006). Mississippi courts have adopted the "allegations of the complaint rule" (sometimes called the "eight-corners test") to evaluate whether an insurer has a duty to defend. *Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 225 (5th Cir. 2005). If the court finds the underlying complaint states a claim within the scope of coverage under the policy, the insurer has a duty to defend the insured. *See Farmland Mut. Ins. Co. v. Scruggs*, 886 So. 2d 714, 719 (Miss. 2004) ("A liability insurance company has an absolute duty to defend a complaint which contains allegations covered by the language of the policy."). If the allegations of the complaint fall outside the scope of coverage, however, the insurer has no duty to defend. *See id*. ("[An insurer] has absolutely no duty to defend those claims which fall outside the coverage of the policy.").

"[U]nlike the duty to defend, which turns on the pleadings and the policy, the duty to indemnify turns on the actual facts giving rise to liability in the underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the policy." *Bradley*, 647 F.3d at 531. Typically, the duty to indemnify is determined at the completion of litigation when liability is established. *Id*.

In Mississippi, insurance policies are contracts and enforced according to their provisions. *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009). "Generally, under Mississippi law, when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written." *Noxubee Cty. Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1165 (Miss. 2004). However, if the policy is ambiguous or unclear, the court must construe the ambiguities in favor of the non-drafting party. *United States Fid. & Guar. Co. of Miss. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008). "A term is ambiguous if it can be interpreted to have two or more reasonable meanings." *Titan Exteriors, Inc. v. Certain Underwriters at Lloyd's, London*, 297 F. Supp. 3d 628, 631 (N.D. Miss. 2018) (quotations

omitted).

## B. The Policy

The exclusionary provision in the Policy provides that coverage does not apply to bodily injury to an employee arising out of and in the course of employment or performing duties related to the conduct of the insured's business. Doc. #38-2 at 17. This provision is clear and unambiguous; therefore, the Court must afford the provision its plain, ordinary meaning and enforce it as written.

Neither party disputes that Brasfield's injuries arose out of his conduct on Strachan's farm. Rather, the parties disagree about whether Brasfield was operating as an employee of Archer Landscape at the time the incident occurred.

In his response to Wesco's motion for summary judgment, Brasfield argues that "[t]he factual issue is whether or not Brasfield was functioning as an employee of Archer Landscape Group, LLC … at the time of the subject accident." Doc. #59 at 1. However, in his state court complaint, Brasfield alleges that "while [he] was an employee of Archer Landscape Group, LLC., … [he] and … Brent Patton[] reported to work at the farm of Defendant Richard Strachan for the purpose of repairing a broken post on a shed." Doc. #23-3 at 2.

Brasfield urges the Court to abandon the allegations of the complaint rule, arguing it is "not applicable." Doc. #59 at 6. The Court disagrees. *See Farmland*, 886 So. 2d at 719 ("To determine if a duty to defend exists one turns to the allegations of the complaint"). Brasfield also insists that the Court consider a proposed amended complaint in the state court action. Doc. #59 at 6. However, Brasfield cites no authority which would support the proposition that the allegations of the complaint rule is inapplicable based on the existence of a proposed amended complaint which has not been filed. Having carefully reviewed the governing state court complaint, the Court finds

that Brasfield's state court allegations indicate that Brasfield was an employee of Archer Landscape when the incident occurred. Therefore, the Court concludes that the allegations in the state court complaint do not impose a duty upon Wesco to defend Archer Landscape.

### C. Exception to Allegations of Complaint Rule

Mississippi courts recognize a narrow exception to the allegations of the complaint rule under which an "insurer has a duty to defend when presented with extrinsic facts, of which the insurer has knowledge or could obtain knowledge by means of a reasonable investigation, that trigger coverage under the policy." *Acceptance Ins. Co. v. Powe Timber Co.*, 403 F. Supp. 2d 552, 557 (S.D. Miss. 2005). These extrinsic facts, sometimes referred to as "true facts," must be considered when determining the existence of coverage. *Id.*

"[I]f an insured submits uncontroverted, competent evidence establishing the falsity of the pertinent allegations in the complaint, the insured has provided 'true facts' under the exception." *Nationwide Mut. Fire Ins. Co. v. Knight*, No. 1:07-cv-1082, 2008 WL 4286507, at *4 (S.D. Miss. Sept. 16, 2008) (citing *Mavar Shrimp & Oyster Co. v. U.S. Fid. & Guar. Co.*, 187 So. 2d 871 (Miss. 1966)). The insured cannot merely deny the allegations in the complaint to establish true facts. *Am. States Ins. Co. v. Natchez Steam Laundry*, 131 F.3d 551, 553–54 (5th Cir. 1998).

Here, the defendants primarily argue that Brasfield was not an employee because he was not paid for the work he performed on Strachan's farm. Doc. #57 at 5; Doc. #58 at 4. Wesco does not dispute that Brasfield was not paid by Archer Landscape for his work on Strachan's farm. Instead, citing to *American Reliable Insurance Co. v. Cliburn*, 345 F. App'x 958 (5th Cir. 2009), it argues that whether Brasfield was paid is immaterial to the determination that he was an employee at the time the incident occurred. This Court agrees.

In *American Reliable*, the Fifth Circuit interpreted a near-identical employee exclusion

provision to conclude that the fact an employee truck driver was not paid wages for a trip was "immaterial under the language of the policy." 345 F. App'x at 960. The Fifth Circuit explained that the applicable employee exclusion provision is broad but, as does the policy here, clearly excludes coverage for bodily injury to employees arising in the course of employment and *while performing duties related to the insured's business. Id.*

The Court therefore finds that the defendants have not submitted uncontroverted evidence proving Brasfield was not an employee of Archer Landscape at the time of the incident. The defendants have only presented evidence that Brasfield was not paid for his work on Strachan's farm. The Court agrees with the Fifth Circuit's reasoning in *American Reliable* and is not persuaded that evidence of nonpayment alone establishes the falsity of Brasfield's state court allegations as required by the exception articulated in *Mavar*. Accordingly, Wesco does not have a duty to defend Archer Landscape in the state court action. As previously mentioned, if an insurer does not have the duty to defend, it cannot have the duty to indemnify. *Evanston*, 442 F. Supp. 2d at 346 n.1. Thus, Wesco also does not have a duty to indemnify Archer Landscape in Brasfield's state court action.

IV
**Conclusion**

For the reasons above, Wesco's motion for summary judgment [47] is **GRANTED**.

**SO ORDERED**, this 21st day of November, 2018.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**